**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

ANDRE JACKSON,

                              Petitioner,

      - v -                                      Civ. No. 9:16-CV-626
                                                              (NAM/DJS)

DANIEL MARTUCELLO,

                              Respondent.
_____

**APPEARANCES:**                              **OF COUNSEL:**

ANDRE JACKSON
Petitioner *pro se*
13-B-0455
Coxsackie Correctional Facility
P.O. Box 999
Coxsackie, New York 12051

HON. BARBARA D. UNDERWOOD       MATTHEW B. KELLER, ESQ.
Attorney General for the State of New York   Assistant Attorney General
Attorney for Respondent
28 Liberty Street
New York, New York 10005

**DANIEL J. STEWART**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**[1]

    *Pro se* Petitioner Andre Jackson was convicted of Criminal Possession of a Weapon in the Second Degree and two counts of Criminal Possession of a Weapon the Third Degree.

---

[1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Dkt. No. 1, Pet. at p. 1; Dkt. No. 7-3 at p. 171.[2] Petitioner presently seeks a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254 on the following grounds: (1) that the conviction was obtained in violation of the Due Process Clause as a result of the Trial Court's failure to dismiss the Indictment prior to trial; (2) that the evidence regarding Count One of the Indictment was not legally sufficient before the New York State Grand Jury, and therefore the Trial Court lacked jurisdiction over Petitioner; (3) that the failure of the prosecutor to test-fire the ammunition and submit that evidence before the Grand Jury, or to inform the Grand Jury of that deficiency, constituted prosecutorial misconduct and violated Petitioner's due process rights; and (4) that the Trial Court's imposition of the maximum sentence of fifteen years determinant was unconstitutionally harsh and severe. Pet. at pp. 6-7. For the reasons that follow, this Court recommends that the Petition be **denied.**

## I. BACKGROUND

On May 16, 2011 at approximately 11:30 pm, the dispatcher for the Utica Police Department received a call regarding "shots fired" in the area of Watson Place. Dkt. No. 7-2 at pp. 29-30. A few minutes later, Officer Grande arrived at the scene and found the body of Reginald Davis in a pool of blood.[3] *Id*. at pp. 35-36. A separate Officer, Sgt. Rios, was canvassing the area close to the shooting, and advised Officer Grande that he had discovered Petitioner laying partially underneath a vehicle, without any shoes or socks on. *Id*. at pp. 37-

---

[2] The State Court Records in this case are docketed as Dkt. Nos. 7-1, 7-2, & 7-3. Throughout this Report-Recommendation citations to the State Court Records will be to the appropriate Docket Number and the page numbers assigned by the Court's CM/ECF System.

[3] No one was ever charged with the homicide of Mr. Davis. Dkt. No. 7-1 at p. 187.

38 & 92-94. Officer Grande then continued his search, proceeding from Watson Place in the direction where Petitioner was found, and came across a pair of socks and sneakers underneath a different vehicle. *Id*. at pp. 40 & 58-59. Cash was also located on the grass in this area. *Id*. at p. 61. The crime scene was then re-canvassed by Utica Police Officer Gregory Facciolo, and when he searched the location near where the socks and sneakers had previously been found, he discovered a nine shot revolver underneath a damp clump of sod. *Id*. at pp. 169-70. This location was 103 feet away from the location where Petitioner was found. *Id*. at p. 181. Officer Facciolo's attention was drawn to the area by the white mesh that covered the gun's handle. *Id*. at pp. 169-70. The gun had one unspent round, and the serial number of the weapon had been obliterated or scratched out. *Id*. at pp. 171-72.

When Petitioner was originally discovered, he indicated that he was lost and confused, and he provided an inaccurate date of birth. *Id*. at pp. 94-95. He had no explanation for why he was missing his shoes and socks. *Id*. at pp. 128-29. He advised a separate officer that the reason why he was under the vehicle was that he was dizzy, had hit his head, and may have been robbed. *Id*. at p. 120. In addition to the absence of socks and shoes, Petitioner was observed to have wet, "pruny" hands. *Id*. at pp. 72, 82, & 93.

During questioning of Petitioner at the police station, the Officers were advised that a loaded weapon had been found at the scene. *Id*. at p. 122. Knowing that DNA testing would likely be conducted, an evidence technician collected a cigarette butt that Petitioner had been smoking. *Id*. at pp. 122 & 136-37. When Petitioner was informed about the gun,

he denied possessing it and stated "it wasn't found near me." *Id.* at pp. 125-26.

The DNA testing of the socks and the sneakers found in the same area as the loaded weapon, as well as the cigarette butt, indicated a match with Petitioner. *Id.* at pp. 240 & 250. Because of the condition of the handgun when found, it was designated for high-sensitivity DNA testing, and only a swab from the mesh wrapping on the handle of the gun was deemed suitable for testing. *Id.* at pp. 299-303. The result of that DNA testing was said to provide, from a statistical standpoint,[4] "very strong support that Andre Jackson and one unknown unrelated person contributed to this mixture." *Id.* at p. 312.

The weapon in question was successfully tested for operability on May 26, 2011. *Id.* at pp. 268-72. As to the round found inside the gun, however, it was not tested immediately. The round itself had a firing pin impression in it. *Id.* at p. 279. The supervisor for the firearms examiner felt that, since there were was only a single unfired cartridge, there was a possibility that additional testing might be needed before it was test-fired. *Id.* at p. 280. When the round was eventually test-fired on December 3, 2012, it was also found to be operable. *Id.* at pp. 279 & 281.

## II. PROCEDURAL HISTORY

Petitioner was indicted on August 29, 2012. Dkt. No. 7-1 at pp. 1-2. Petitioner was charged with Criminal Possession of a Weapon in the Second Degree, in violation of NY Penal Law § 265.03, subdivision three, as a result of his alleged possession of a loaded

---

[4] The ratio was approximately 3.42 million times more probable. *Id.* at p. 312.

firearm; Criminal Possession of a Weapon in the Third Degree in violation of NY Penal Law § 265.02, subdivision one, as a result of his alleged possession of a weapon; Criminal Possession of a Weapon in the Third Degree, in violation of NY Penal Law § 265.02, subdivision three, based upon the alleged possession of a defaced handgun; and one count of the misdemeanor of false personation pursuant to NY Penal Law § 190.23. *Id.* As to the final count of the Indictment, the Trial Court dismissed that misdemeanor charge on Motion. *Id.* pp. 131-35.

Petitioner waived a jury trial, and proceeded before the Trial Court Judge. The trial was held on December 11 and 12, 2012, and the Court rendered its verdict in the morning of December 13, 2012. Dkt. No. 7-3 at p. 171. Petitioner was found guilty on all three remaining charges. *Id.* at p. 354. On February 8, 2013, the Trial Court sentenced Petitioner to a determinate sentence of fifteen years, together with five years of post-release supervision as required by law. Dkt. No. 7-3 at pp. 173-178.

Petitioner filed a timely Notice of Appeal. Dkt. No. 7-1 at p. 9. The five issues raised on appeal were: (1) that the conviction was against the weight of the trial evidence; (2) that Petitioner was denied due process by the Trial Court's failure to dismiss the Indictment prior to trial; (3) that the Trial Court lacked jurisdiction over the Petitioner on Count One of the Indictment; (4) that Petitioner was denied due process due to prosecutorial error or misconduct; and (5) that Petitioner's determinate sentence of fifteen years imprisonment for his conviction of criminal possession of a weapon in the second degree was unduly harsh and

severe. Dkt. No. 7-1 at pp. 17-40. Petitioner also filed a Motion to Vacate his Sentence under New York's Criminal Procedure Law (CPL) §440.10, but the Trial Court denied that Motion on the ground that the issues sought to be raised—the sufficiency of the trial evidence and the alleged violation of petitioner's constitutional rights—could be decided on direct appeal. *Id.* at pp. 200-04.

On November 14, 2013, the Appellate Division denied Petitioner's appeal and noted that evidence was presented at trial that the weapon in question was found within one hundred feet of Petitioner within the secured crime scene, and within thirteen feet of his shoes and socks, and the DNA evidence revealed that it was probable that the Defendant had handled the revolver. *Id.* at p. 213. The Appellate Division concluded that County Court "could have reasonably inferred that, 'at some point before the defendant's apprehension by the police and the concomitant recovery of the [defaced revolver], he possessed a firearm loaded with operable ammunition.'" *Id.* at pp. 213-14 (quoting *People v. Taylor*, 83 A.D. 3d 1505, 1506 (4th Dep't 2011)). The Appellate Court also noted that Petitioner's claim that the evidence before the Grand Jury was insufficient was not reviewable on appeal where there was legally sufficient trial evidence. *Id*. Finally, the Court concluded that Petitioner's sentence of fifteen years was not unduly harsh or severe. *Id*. Petitioner, through his counsel, attempted to seek leave to the New York State Court of Appeals, but on February 24, 2015 that Motion was denied. Dkt. No. 7-1 at p. 217.

### III.  DISCUSSION

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234697, at *3 (S.D.N.Y. Aug. 28, 2003). A federal court may not grant *habeas* relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006).

The Second Circuit has summarized the application of the standard of review under AEDPA as follows:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief:  1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled?  2) If so, was the state court's decision "contrary to" that established Supreme Court precedent?  3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362 (2000) and *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).  The standard of

review under § 2254(d) is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts." *Id*. at 413. A state court decision is an "unreasonable application" of established Supreme Court precedent "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and [5] t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001) (quoting § 2254(e)(1)).

---

[5] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

### B. Grand Jury Testimony

The first three grounds for review presented in the Petition share the common element of alleged defects before the New York State Grand Jury. In particular, Petitioner's first claim is that the grand jurors were not presented with any expert evidence that the bullet found in the chamber of the handgun was in fact operable, and therefore those grand jurors could not have properly indicted him for the most serious charge: possession of a loaded firearm.[6] Pet. at p. 6. Petitioner's second and related argument is that because there was insufficient evidence to charge him with possession of a loaded weapon, the Trial Court lacked jurisdiction even to have a trial on that charge. Petitioner's third argument in this regard is that the Prosecutor committed misconduct by not presenting the evidence about whether the weapon was operable to the Grand Jury, or to advise the Grand Jury of this defect in the case. Upon review, this Court recommends that the first three grounds for *habeas* review be rejected.

The Second Circuit has held that claims arising from a grand jury proceeding are non-cognizable on *habeas* review because any alleged prejudice from deficiencies in the grand jury proceedings is cured by a subsequent conviction after trial. *See Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) (stating that under *United States v. Mechanik*, 475 U.S. 66 (1986)

---

[6] As noted *supra*, the bullet was in fact not tested until shortly before the criminal trial, at which point it was submitted for analysis and found to be live ammunition. Expert proof in that regard was presented to the Trial Court Judge.

"claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court"). In *Lopez*, as here, the claim was that the evidence presented to the grand jury was not legally sufficient, and that the prosecutor failed to develop and present exculpatory evidence or to properly explain the law. *Id.* at 31 & 33. Nevertheless, the court in *Lopez* concluded "[e]ach of these alleged improprieties was cured in the trial" and, therefore, any error before the grand jury was harmless. *Id.* This reasoning forecloses Petitioner's first three arguments. Therefore, and in accordance with the binding precedent of the Second Circuit, the Court recommends that the Petition be **denied** as to Petitioner's three claims relative to the grand jury proceeding.

### C. Harsh and Excessive Sentence

As a final ground for review, Petitioner argues that his determinate sentence of fifteen years was "harsh and excessive" because he never had the gun on his person, and he had no violent history or convictions which would have warranted the maximum sentence. Pet. at p. 7. Petitioner was sentenced as a second felony offender to the maximum term of fifteen years, plus five years post-release supervision, on his conviction for Possession of a Weapon in the Second Degree, which is a class C violent felony. *See* Dkt. No. 7-3 at pp. 173-78; N.Y. PENAL LAW §§ 70.06(6)(b) & 265.03.

First, as Respondent correctly argues, Petitioner did not exhaust his remedies on this claim because he did not include it specifically in his application for leave to the Court of Appeals. Dkt. No. 7-1 at pp. 215-16. In the letter to the Court of Appeals, Petitioner's

counsel asked the Court to review "the following issues particularly:" (A) that the Trial Court lacked jurisdiction over the top count due to insufficient evidence before the grand jury, and (B) that the verdict of conviction by the Trial Court was against the weight of the evidence. *Id.* While Petitioner's counsel did attach the briefs submitted to the Appellate Division, the submitted brief concedes that the fifteen year sentence imposed "was legally authorized by statute." Dkt. No. 7-1 at p. 39. The rule in this Circuit is that where the application for leave to appeal expressly raises specific issues to be considered by the Court, but fails to include other arguments, the unmentioned claims are deemed abandoned. *Ramirez v. Attorney Gen. of State of New York*, 280 F.3d 87, 97 (2d Cir. 2001) ("References to attached briefs without more will preserve issues only if the Court of Appeals is clearly informed that the reference is asserting issues in those briefs as bases for granting leave to appeal."); *Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir 1991).

Although Petitioner's claim is therefore unexhausted, because it is meritless, the Court recommends that it be **denied** on the merits. *See* 28 U.S.C. § 2254(b). "No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992). Here, as explained above, Petitioner's sentence was within the range prescribed by state law. Petitioner was sentenced as a second felony offender on a conviction for Criminal Possession of a Weapon in the Second Degree, which is a class C violent felony. N.Y. PENAL LAW §§ 70.06(6)(b) & 265.03. Under CPL § 70.06(b), a determinate sentence for a second felony offender on a

class C violent felony "must be at least six years and must not exceed fifteen years." Therefore, Petitioner's excessive sentence claim does not raise a basis for *habeas* relief.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition (Dkt. No. 1) be **DENIED** and **DISMISSED**; and it is further

**RECOMMENDED**, that no Certificate of Appealability ("COA") be issued because Petitioner has failed to make "a substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2).[7] Any further request for a COA must be addressed to the Court of Appeals (FED. R. APP. P. 22(b)); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir.

---

[7] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation").

1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: September 18, 2018
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge